27595. CHAMBERS LUMBER COMPANY *v.* GILMER *et al.*

DECIDED SEPTEMBER 9, 1939. REHEARING DENIED OCTOBER 27, 1939.

*Sam S. Harben, Boyd Sloan,* for plaintiff.
*Oliver & Oliver, Jabe H. Barnett, Ralph L. Wiggins,* for defendants.

SUTTON, J. Chambers Lumber Company brought suit to foreclose its materialman's lien against Mrs. Annie Ruth Goforth Gilmer as the owner of certain realty in Gainesville, Georgia, and Home Owners Loan Corporation as owner and holder of a security deed to said property. After evidence had been introduced by all parties the court directed a verdict in favor of the defendants, and the exception is to a judgment overruling the plaintiff's motion for new trial. In the view we take of the case we think that the action of the court was proper, inasmuch as the evidence showed conclusively that the plaintiff's lien was not recorded within three

months from the date of delivery of the last item of material in the running account. The uncontradicted evidence shows that Mrs. Gilmer engaged J. B. Taylor, a contractor, to construct for her a dwelling-house on her lot in the City of Gainesville; that the house which was formerly on the lot was destroyed by a cyclone, and certain money which she recovered under an insurance policy was turned over to the Home Owners Loan Corporation, from which she had obtained a loan for which she had executed and delivered a security deed, it being the intention that the corporation supervise and approve the construction of the house; that Taylor purchased from the plaintiff certain materials which went into the construction of the house, and after the work had been examined and approved on May 13, 1936, the corporation paid Taylor in full; that on September 18, 1936, the plaintiff, not having been fully paid by Taylor, recorded in the office of the clerk of the superior court of Hall County its claim of lien; that on February 14, 1937, the plaintiff instituted suit against Taylor to recover an alleged balance of $289.70 on certain specific items, and on June 7, 1937, obtained a default judgment in that amount. In the bill of particulars the first item was shown to have been delivered on April 23, 1936, and the last item to have been delivered on June 17, 1936, on which day one screen door, one pair of spring hinges, and one screen-door lock were listed. To the petition seeking to foreclose its lien the plaintiff had attached a copy of the itemized account set up in the suit against Taylor. Before the present suit came on for trial the plaintiff amended its petition by alleging that "the last item of material furnished by plaintiff to the said contractor, J. B. Taylor, and used by the said J. B. Taylor in the construction of said house of Mrs. Gilmer, was furnished and delivered on the 23d day of June, 1936." E. H. Chambers, president and general manager of the plaintiff company, testified that "the last item of material was furnished on this job by Chambers Lumber Company to Taylor on June 23, 1936." What the item was, and whether or not it was chargeable to the contractor, the evidence fails to disclose. It is not contended that the delivery was that which was shown in the bill of particulars as having been made on June 17, 1936.

Plaintiff in error contents itself in arguing that, being the last item furnished, whatever it was, the three-months time in which

a claim of lien must be filed, as provided by the Code, § 67-2002 (2), must be computed from the date named, June 23, 1936, and not from the delivery date of the last item in the bill of particulars; and that, as no more is asked in the way of a lien than the amount of the judgment obtained against the contractor, the defendants can not complain. In support of its contention it cites and relies on *Pippin* v. *Owens,* 29 *Ga. App.* 789 (116 S. E. 549), in which it was held: "1. Where material furnished by a materialman for the improvement of real estate is charged on open account, a lien for it recorded by the materialman within three months from the furnishing of the last item of material *charged upon the open account* is recorded within three months from the completion of the contract, and therefore within the statutory period required under Civil Code (1910), § 3353 [1933, § 67-2002]. *Stewart* v. *Randall,* 138 *Ga.* 796 (2) (76 S. E. 352); *New Ebenezer &c. Asso.* v. *Gress Lumber Co.,* 89 *Ga.* 125 (14 S. E. 892). 2. Although the items unpaid for and for which the materialman claims a lien were all furnished more than three months prior to the recording of the lien, and all the other items, including those representing material furnished within three months of the recording of the lien, had been paid for, the fact still remains that the lien thus recorded was recorded within three months from the furnishing of the last item *charged upon the account,* and therefore within three months of the completion of the contract." (Italics ours.) All that that decision holds, in respect to the contention of the plaintiff in error, is that if the claim of lien be recorded within three months from the date of the last item listed on the running account, "charged upon the open account," against the purchaser, it is recorded in time, even though such particular item has been paid for. The account submitted was a complete statement of debits and credits, with proper net balance shown, as the basis for establishing the correct amount of a special lien in a suit against the owner of the property to foreclose the lien, and the buyer and the owner were one and the same person. That case is not authority for the proposition that in a suit to foreclose a lien one may set up dates and items which were used in a previous suit against a contractor, and when confronted, in the suit against the owner, with the fact that a claim of lien was not recorded within three months from the last date of delivery

shown in the bill of particulars in the antecedent suit against the contractor, may amend and testify that some indefinite, unnamed item, which was not included in the statement of the running account against the contractor, was furnished since the date of the item last named in such running account and not more than three months before the recording of the claim of lien.

The function of a foreclosure suit is not to establish for the first time when and what materials were furnished for a particular job. It is not a suit in personam, when the contractor is not a party and the purpose is merely to absolutely establish a· special lien against the property involved, and no general verdict and judgment can be obtained therein against the owner. *Ryals* v. *Smith,* 102 *Ga.* 768 (29 S. E. 968) ; *Langley* v. *Simmons,* 143 *Ga.* 699 (85 S. E. 832) ; *Griffin* v. *Gainesville Iron Works,* 144 *Ga.* 840 (88 S. E. 201) ; *Middle Georgia Lumber Co.* v. *Hunt,* 53 *Ga. App.* 578, 580 (186 S. E. 714). Although the initial suit against the contractor is in personam, the foreclosure suit against the owner is strictly in rem. *Buck* v. *Tifton Mfg. Co.,* 4 *Ga. App.* 695, 696 (62 S. E. 107), citing. It is in the antecedent suit against the contractor that the adjudication is made as to items furnished and the amount due with respect to a particular contract. As to the contractor the obligation is primary; as to the owner it is collateral only, and conditioned on the recording by the materialman of a claim of lien within the statutory period. "It is well settled that before a materialman's lien for materials furnished to a contractor to improve the real estate of another can be foreclosed, there must be a judgment for the price *of such materials* in his favor against the contractor, or the contractor must be sued concurrently with· the owner of the property improved." (Italics ours.) *Mauck* v. *Rosser,* 126 *Ga.* 268, 274 (55 S. E. 32) ; *Pike Lumber Co.* v. *Mitchell,* 132 *Ga.* 675 (64 S. E. 998) ; *Rome Brick Co.* v. *West,* 134 *Ga.* 65 (67 S. E. 400) ; *Hood Brick Co.* v. *Mangham,* 161 *Ga.* 457 (131 S. E. 172). "The reason of the rule is that the landowner should not be called on to pay a debt he did not contract, and for which his property is liable only by force of a statute, until the materialman has established by judgment, in a proceeding to which the contractor is a party, that the contractor owes to him the amount for which he is seeking to assert his lien. The landowner's liability to the materialman who sells

to his contractor on the latter's responsibility is not primary, but collateral, and dependent wholly upon compliance with the statute which creates the liability." *Pike Lumber Co.* v. *Mitchell,* supra. The plaintiff in the trial court was attempting to perfect a special lien on the owner's property. It could not do so without first showing that it had filed its claim of lien within three months from the date of the last delivery of one or more specific items on the particular job, and had obtained against the contractor a judgment based on all of the items shown in the running account or bill of particulars involved in *that* suit. It could not try out, in a suit to foreclose a lien, the question whether or not it had furnished any item not appearing in the running account presented in the suit against the contractor. These conclusions necessarily follow from the authorities above cited. Suppose that the plaintiff, in a suit against the contractor, had set up that the last item was furnished on June 23, 1936, and the evidence wholly failed to show that there had been any delivery whatever since June 17, 1936, it certainly could not be said that a claim of lien recorded on September 23, 1936, would comply with the statute. In the present case the plaintiff, without the contractor being made a party to the suit, attempted to have adjudicated that there had been a delivery of some unnamed material after the last date shown on the running account set up in the suit against the contractor. Whatever the item was, it was not included in the running account involved in the suit against the contractor, and could not be invoked in the foreclosure suit to establish that the claim of lien was recorded within the statutory period. It has never been determined, in an antecedent suit against the contractor, that any delivery was made to him after June 17, 1936, or that he was liable for anything not set up in the running account in the suit against him. After the expiration of twelve months (from the time the account against the contractor becomes due) within which suit might be brought against the contractor (Code, § 67-2002 (3)) the materialman could not assert that he had delivered anything to the contractor after June 17, 1936. By the same token he can not so assert in a foreclosure suit against the owner. "The owner's liability as to amount and *in all other respects* can be no greater than the contractor's." (Italics ours.) *Philip Carey Mfg. Co.* v. *Viaduct Place,* 1 *Ga. App.* 707 (3-b) (58 S. E. 274).

It not appearing from the evidence that the claim of lien was recorded within three months after the last delivery of material as evidenced by the running account involved in the suit against the contractor, the plaintiff was not entitled to foreclose the asserted lien, and the court properly directed the verdict in favor of the defendants, and accordingly did not err in overruling the plaintiff's motion for new trial. It might be added that the court did not err in directing a verdict in favor of the defendants, for the additional reason that there was in evidence an affidavit from the contractor that "the agreed price or reasonable value thereof has been paid for all labor and material used in the improvement of the real estate herein referred to, and there are no unpaid claims for labor or materials outstanding against same," and because of this affidavit the property involved was not subject to the materialman's lien asserted. The plaintiff contends that the affidavit was not "taken" by the owner, Mrs. Gilmer, but by the Home Owners Loan Corporation, and that its action could not inure to the benefit of Mrs. Gilmer. This contention is without merit, for the following reasons: The Code, § 67-2001(2), provides: "When work done or material furnished for the improvement of real estate is done or furnished upon the employment of a contractor or some person other than the owner, the lien given by this section shall attach to the real estate improved, as against such true owner, for the amount of the work done or material furnished, unless such true owner shall show that such lien has been waived in writing, or *shall produce* the sworn statement of the contractor or other person, at whose instance the work was done or material was furnished, that the agreed price or reasonable value thereof has been paid: Provided, that in no event shall the aggregate amount of liens set up hereby exceed the contract price of the improvements made." (Italics ours.) It will be observed that the statute does not require, as contended by the plaintiff, that the owner shall "take" an affidavit from the contractor in order to prevent the materialman's lien from attaching. It provides that the lien shall attach, unless the true owner shows that such lien has been waived in writing or *produces* the sworn statement of the contractor, etc. In the present case Mrs. Gilmer was in law the "true owner," although the Home Owners Loan Corporation held her security deed; but it appears that such corporation was acting as agent for her in

supervising the construction and completion of her dwelling-house, and, after its inspector had reported the proper completion of the work, in paying to Taylor, the contractor, the balance due him out of money which Mrs. Gilmer had deposited with the corporation for that purpose. The affidavit was "taken" from Taylor by the corporation, but it was *produced* on the trial on behalf of both defendants, and consequently showed that the property was not subject to the lien claimed.

A ground of the motion for new trial complains that the contractor's affidavit was improperly admitted in evidence, over the plaintiff's objection, in that its execution had not been proved. The plaintiff, to show lack of execution, called as a witness the clerk of the superior court of Hall County. He testified that he was sure that he saw J. B. Taylor sign the paper purporting to be an affidavit, because the witness put his own signature and seal on the paper, that he was positive that his purported signature was his own, but that he could not remember whether or not he had administered an oath to Taylor. In *Britt* v. *Davis,* 130 *Ga.* 74, 76 (60 S. E. 180), it was said: "The signature of the person claimed to be an affiant, accompanied by the jurat signed by the officer, is prima facie sufficient evidence that the oath was administered. But if in fact no oath was administered, a false certificate by the magistrate to that effect would not take the place of the administration of the oath. If the paper appears on its face to be regular, one who attacks it carries the burden of showing that it was not in fact legally executed." In *Miller* v. *Caraker,* 9 *Ga. App.* 255 (2) (71 S. E. 9), it was held: "A signed statement of facts, purporting to be the statement of the signer, followed by the certificate of an officer authorized to administer oaths, that it was sworn to and subscribed before him, is a lawful affidavit. It is not necessary that it should be stated in the instrument, prior to the signature of the affiant, that the declaration was made under oath, if in fact the oath was administered. Whether the oath was or was not administered is a matter as to which the certificate of the officer is prima facie evidence, but as to which parol evidence is admissible." See *Green* v. *Rhodes,* 8 *Ga. App.* 301 (68 S. E. 1090); *Harris* v. *Hines,* 35 *Ga. App.* 414 (3) (133 S. E. 294). The burden was on the plaintiff to overcome the prima facie validity of the paper as a lawful affidavit, and it failed to carry

that burden. The witness did not testify that the oath was not administered, stating merely in that respect that he did not remember whether it was administered or not. He did testify that the contractor Taylor signed the statement, and that he (the witness) signed the jurat and affixed his seal. In these circumstances, under the above authorities, the paper must be taken as a lawful affidavit, and the court did not err in admitting it in evidence.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*